**Frank J. DELANY, Appellant,**

v.

**James Peter MURPHY, and Medical Service of the District of Columbia, Appellees.**

**No. 7959.**

District of Columbia Court of Appeals.

Argued Oct. 29, 1974.

Decided May 22, 1975.

Rehearing Denied Sept. 26, 1975.

Frank J. Delany, pro se.

No appearance was entered for appellee James Peter Murphy.

Warren E. Magee, Washington, D. C., for appellee Medical Service of the District of Columbia.

Before KELLY and NEBEKER, Associate Judges, and PAIR, Associate Judge, Retired.

KELLY, Associate Judge:

Richard M. Delany, the then minor son of appellant Frank J. Delany, sustained a depressed skull fracture as a passenger in an automobile collision in December of

1966. At the time of the accident Richard was the holder of an Individual Surgical-Medical Certificate with appellee Medical Service of the District of Columbia and appellant held a Family Certificate. Appellee James Peter Murphy, a neurosurgeon and participating physician in the medical service plan of appellee Medical Service, performed several surgical procedures on Richard's head injuries, including a craniotomy (removal of bone fragments).[1] Murphy thereafter sent appellant a bill for these services in the sum of $1,090 which appellant refused to pay, claiming that the medical expenses were covered by Medical Service under Richard's individual certificate and, in any event, that Murphy could not under the circumstances make charges beyond those Medical Service would pay.

Murphy sued appellant for $850.25, a sum representing the total amount of his fee less a payment of $239.75 received from Medical Service. Appellant answered, denying liability, and simultaneously filed a third-party complaint against Medical Service for reimbursement of any monies recovered from him by Murphy. On motions for summary judgment filed by all parties the trial judge found that Medical Service could not be brought into the action as a third-party defendant and that appellant's income level and his receipt of $1,000 from the insurer of the owner of the accident car[2] relieved Murphy of any obligation under Richard's certificate to charge a limited fee. The summary judgment motions of the appellees were granted and that of appellant denied.

We concur in the trial court's dismissal of the third-party complaint and its finding that appellee Murphy could make additional charges to appellant because of liability insurance payments received from others, and affirm.

I

A threshold matter of concern is whether this court has jurisdiction of the appeal. For reasons that are not clear of record, although the trial judge ruled on the various motions for summary judgment on February 16, 1973, his findings of fact and conclusions of law were not accompanied by a judgment. As a consequence, since Super.Ct.Civ.R. 58 and 79(a) require that to be effective, a judgment must be contained in a separate document and entered on the civil docket, there was no appealable order entered on that date.

In response to appellant's motion to amend its findings of fact and conclusions of law, the trial court issued an order on May 10, 1973, confirming the grant of summary judgment to appellees. No judgment accompanied this order and, again, no judgment was entered on the docket. Undaunted in his pursuit of an appealable order, appellant moved the court under Rule 59(e) to clarify the record by amending its order of May 10. Some four months later, on September 28, 1973, the court reaffirmed the prior orders and ordered the entry of a judgment "in favor of plaintiff Murphy against defendant Delany in the amount of $850.25, said judgment to be dated February 16, 1973, and to carry interest from that date." Appellant filed a timely notice of appeal from this final judgment on October 26, 1973, and this court has jurisdiction of that appeal.[3]

II

With reference to appellant's third-party complaint against Medical Service, Super.Ct.Civ.R. 14 permits a defendant to bring in one not a party to the action "who is or may be liable to him for all or part of the plaintiff's claim against

---

1. Two simultaneous surgical procedures, a craniotomy and a cranioplasty, were performed through the same incision.

2. The car, which struck a tree, was owned by Edward Stodola and was driven by his son, John Stodola.

3. United States v. Schaefer Brewing Co., 356 U.S. 227, 78 S.Ct. 674, 2 L.Ed.2d 721 (1958).

him." If the party sought to be impleaded can only be liable to the original plaintiff, however, he cannot be brought into the action under Rule 14.[4] And since it is settled in this jurisdiction that the Medical Service Certificate at issue is, in theory, a contract to provide services to the subscriber [5] and that payment for services rendered made pursuant to the contract is to be made to "participating physicians" and not to the insured,[6] Medical Service could not be liable over to appellant for any part of a judgment which Murphy might obtain.[7] It thus cannot be impleaded in this action.

■ Appellant also contends that he should have been allowed to include an additional claim for damages in his third-party complaint against Medical Service for allegedly inducing Murphy to overcharge for his services. This claim must also fail, however, for when the attempt to make the additional claim is made in the context of third-party practice, there must first be a valid third-party complaint, and such is not the case here.

### III

Appellees [8] predicate appellant's liability for Murphy's charge in excess of the amount paid by Medical Service on two clauses in Richard Delany's certificate, one concerning income levels and the other relating to payments received by reason of the liability of third parties. Both clauses allow Murphy to make charges over and above the amount of coverage provided by Medical Service.

In Richard's Individual Surgical-Medical Certificate the amount of the physician's charge was made dependent on the "Subscriber's" level of income and Richard was designated as the Subscriber. In the Schedule of Fees,[9] however, a dependent child such as Richard was defined as a "family participant". The Schedule of Fees allowed physicians to charge in excess of the listed fee for an operation if total family income exceeded $6,000. The trial court found as a fact that appellant's income was greater than $6,000, which allowed Murphy to make an additional charge, and that it was irrelevant that Richard had no income.

■ We would have some difficulty with the trial court's ruling if the income level provision were the only basis for appellant's liability. Richard was the holder of a certificate in his own right on which premiums had to be paid. His certificate was purchased by appellant because children nineteen years and older were expressly excluded from coverage under family certificates. The added cost of including Richard in a family contract would have been approximately $3.84 per year [letter of D. S. Farver, June 20, 1968] and it is reasonable to assume that the cost of his individual certificate was many times that. In addition, there is the question of notice to the subscribers. From what we can discern, the terms of the Schedule of Fees are not widely disseminated to subscribers. On the other hand, Richard was still economically dependent on his family, and it would be reasonable for a physician rendering services to him to look to the actual source of his support for compensa-

4. United States v. Crow, Pope & Land Enterprises, Inc., 340 F.Supp. 25, 36 (D.C.Ga. 1972); Cass v. Brown, 41 F.R.D. 284, 287 (D.C.Colo.1966).

5. Jordan v. Group Health Ass'n, 71 App.D.C. 38, 47, 107 F.2d 239, 248 (1939).

6. Anderson v. Group Hospitalization, Inc., D.C.App., 203 A.2d 421, 423 (1964).

7. The Surgical-Medical Certificate of Richard Delany provided, as did the certificate in Anderson: "Subject to the terms and condi-

tions of this Contract, the Corporation will compensate Participating or Cooperating Physicians for . . . services . . . according to the applicable Schedule of Fees in effect when the service is rendered. . . ." [R. at 13.]

8. For purposes of this appeal Murphy has adopted the brief of appellee Medical Service.

9. The Schedule of Fees is a listing of the amounts Medical Service will pay for the listed operations, but it is not sent out routinely to subscribers.

tion. Had this transaction not taken place through the medium of "insurance", appellant would have been liable for the cost of the operation. The exclusion of dependent children nineteen years of age and over from coverage under family certificates created an anomalous situation which was dispelled in part by Medical Service in November of 1968 by amending family contracts to include unmarried dependent children who are full-time students. In any event, in the light of our disposition of the case, we find it unnecessary to reach the issue of whether appellant's income was properly considered as controlling in determining allowable physician's fees.

Under the Individual Certificate a participating physician could make additional charges for his services "to the extent of any payment or reimbursement which the Subscriber receives by virtue of a third party's liability . . . . " The clause applies only to reimbursement which the subscriber actually receives,[10] and in our opinion this second release clause permitted Murphy to charge appellant an amount in excess of that to be borne by Medical Service.

In July of 1967 when Murphy filed suit against appellant, the latter had received a $1,000 payment under the medical payments coverage of the owner of the accident car. Appellant subsequently filed suit against both the owner and the driver in September 1969. By the time final judgment was rendered in this case, there was evidence of record that the personal injury action had been settled for $22,500.[11] Either the $1,000 payment standing alone, as the trial judge found, or the total payment of $22,500 supports appellant's liability for that part of Murphy's bill over the amount of the fee schedule.

Appellant raises the argument that this release clause would allow multiple overcharges by physicians on the receipt of only a small recovery from a third party, such as the first payment of $1,000 here. That is not present in this case, for while it is asserted that there were numerous doctor and hospital bills as a result of Richard's injuries, there are no allegations that any other medical creditor made a charge beyond those covered by Richard's hospitalization and surgical-medical certificate,[12] or that any such charges, if made, exceeded $1,000 let alone $22,500. Appellant claims that the $1,000 payment was applied to a hospital bill, but this is irrelevant since Richard would have received a corresponding payment for this under his hospitalization certificate regardless of the third-party payment.

IV

Appellant stipulated at pretrial that Murphy's total bill was reasonable and that only the difference between that bill and the payment received from Medical Service was, upon a finding of liability, chargeable to him.[13] Accordingly, for the above reasons the judgment on appeal[14] is

Affirmed.

10. Letter of Dr. Murphy to appellant dated June 6, 1967. [R. at 33.]

11. The amount of settlement was disclosed in appellees' opposition to the motion to amend findings of fact and conclusions of law.

12. Richard was a subscriber to both.

13. "(3) For the purposes of the resolution of the legal issues in the above-entitled cause, defendant does not question the reasonableness of the charge of $1090.00 billed by the plaintiff for the professional services rendered as above-described and agrees that, upon final disposition of all legal issues relating to liability, he will, if he is found to be liable, pay the proper amount due the plaintiff based on a total charge of $1090.00.

"(4) Third-party defendant has paid to plaintiff the sum of $239.75, which should be credited against said amount of $1090.00, and only the difference is chargeable to defendant upon final resolution of the question of liability. The defendant has thus far refused to pay said difference. Plaintiff has accepted the amount of $239.75 in final adjudication of any liability of the third-party defendant to the plaintiff." [R. at 141–42.]

14. The several other allegations of error, not discussed in this opinion, are without merit.