NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 18

No. 2017-026

| State of Vermont | Supreme Court |
|---|---|
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| William Edward Bailey | February Term, 2016 |

Cortland Corsones, J.

Rosemary M. Kennedy, Rutland County State's Attorney, Rutland, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Sara M. Puls, Appellate Defender, Montpelier, for
  Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.    **REIBER, C.J.**   Defendant William Bailey appeals the trial court's order to set bail at $25,000 and its determination that neither his father nor his girlfriend are responsible adults to whom he can be released. We affirm.

¶ 2.    An affidavit of probable cause submitted to the court describes the following facts. At roughly 1:30 am on December 18, 2016, the Vermont State Police received a call from defendant in which defendant told the police that he had accidentally shot his friend Daniel Hein and that Hein was likely dead. When the police arrived at the scene in Poultney, they found Hein's dead body in the back seat of defendant's car; he had been shot in the head.

¶ 3.     The police investigation revealed the following facts.  Defendant, Hein, Jonathon Testa, and Dylan Czarnecki were out together in Poultney in defendant's car.  At one point, defendant dropped off Hein and Testa so that they could burglarize a farm stand and use the money to buy alcohol.  Defendant and Czarnecki continued to drive around Poultney, drinking alcohol and smoking marijuana.  After they picked up Hein and Testa, the four drove to a private residence in Poultney to retrieve a gun—a .44 magnum—that Testa had stolen during a recent robbery in Fair Haven.  Apparently, the four planned to cross the border into New York to burglarize another farm stand.  Defendant parked the car in the residence's driveway and Testa went into the residence.  Testa returned with the gun, which did not have a magazine inserted.  Testa told defendant that the gun was not loaded and handed the gun to defendant.  Hein then challenged defendant to point the gun at Hein's forehead and pull the trigger and claimed that nothing would happen.  Defendant did so.  The gun was in fact loaded, and Hein was killed.

¶ 4.     On December 19, defendant was charged with manslaughter, and the court set bail at $50,000.  Defendant later filed a motion to review bail, and the court held bail review hearings on December 28 and 29.  The court lowered bail to $25,000 but—after hearing testimony from both defendant's father and defendant's girlfriend—determined that there was no responsible adult to whom defendant could be released.  Defendant filed a notice of appeal with this Court on January 12, 2017.  Chief Justice Paul Reiber held a one-justice hearing on the appeal on January 24.  He subsequently referred the case for a full-court hearing—which was held on February 6— in order to address the issue of whether and to what extent the court must consider a defendant's ability to pay when setting bail.

¶ 5.     The State did not seek to hold defendant without bail pursuant to 13 V.S.A. § 7553a, electing instead to have bail imposed pursuant to 13 V.S.A. § 7554.  In cases of bailable offenses, there is a presumption that the defendant may be released before trial either on his or her own recognizance or on an unsecured appearance bond.  However, the presumption is rebutted if the

2

court determines that such conditions are insufficient to assure the defendant's appearance at future court proceedings. See 13 V.S.A. § 7554(a)(1) ("The defendant shall be ordered released on personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer unless the judicial officer determines that such a release will not reasonably ensure the appearance of the person as required."). To determine whether such conditions are insufficient to assure the defendant's appearance at future court proceedings, the court must consider not only the "seriousness of the offense charged" but also the "number of offenses" charged. Id. And if the court makes a determination that such conditions are insufficient, it may either replace or supplement those conditions with additional, specified conditions. Id.

¶ 6. These additional conditions include (1) placing "the defendant in the custody of a designated person or organization agreeing to supervise him or her";[1] (2) restricting "the travel, association, or place of abode of the defendant"; (3) requiring "the defendant to participate in an alcohol or drug treatment program"; (4) requiring "the execution of a secured appearance bond" and "the deposit with the clerk of the Court, in cash or other security as directed, of a sum not to exceed 10 percent of the amount of the bond"; (5) requiring "the execution of a surety bond with sufficient solvent sureties, or the deposit of cash in lieu thereof"; (6) placing the defendant under "community-based electronic monitoring"; or (7) imposing "any other condition found reasonably necessary to ensure appearance as required." Id. § 7554(a)(1)(A)-(G)

¶ 7. Importantly, these conditions must not be more than what is necessary to assure the defendant's appearance at future court proceedings—the court may only impose the "least restrictive" of these conditions to "reasonably ensure the appearance of the defendant as required." Id. § 7554(a)(1) (emphasis added). The purpose of these conditions, therefore, is solely to reduce

---

[1] This condition may be imposed only "if the defendant is charged with an offense that is not a nonviolent misdemeanor or nonviolent felony as defined in 28 V.S.A. § 301." 13 V.S.A. § 7554(a)(1)(A).

the defendant's risk of flight. And to determine which of these conditions to impose, the court must consider the following factors: "the nature and circumstances of the offense charged, the weight of the evidence against the accused, the accused's family ties, employment, financial resources, character and mental condition, the length of residence in the community, record of convictions, and record of appearance at court proceedings or of flight to avoid prosecution or failure to appear at court proceedings." 13 V.S.A. § 7554(b). To assess the defendant's "character and mental condition," the court may consider "[r]ecent history of actual violence or threats of violence." Id.

¶ 8. Similarly, the court may only impose bail to assure the defendant's appearance at future court proceedings—in other words, the purpose of bail is solely to reduce the defendant's risk of flight. See State v. Cardinal, 147 Vt. 461, 464, 520 A.2d 984, 986 (1986) ("[T]he sole constitutionally legitimate purpose of monetary conditions of release is to provide 'additional assurance of the presence of an accused.' " (quoting Stack v. Boyle, 342 U.S. 1, 5 (1951))); see also State v. Pray, 133 Vt. 537, 541, 346 A.2d 227, 229 (1975) ("The purpose of bail, as presently constitutionally mandated, is to assure the defendant's attendance in court"). The court may not impose bail with the purposes of punishing the defendant or of protecting the public; other sections of Vermont criminal law prescribe the methods of accomplishing those purposes. See Pray, 133 Vt. at 541-42, 346 A.2d at 229.

¶ 9. When a defendant appeals an order imposing bail or a condition of release—or determining that a condition has not been satisfied—we affirm the order "if it is supported by the proceedings below." 13 V.S.A. § 7556(b). And in assessing whether the order is supported by the proceedings, we recognize that the court possesses a high degree of discretion in analyzing the evidence before it, in imposing bail or a condition of release, and in determining whether a condition has been satisfied. We reverse only if the court has abused its discretion. See, e.g., State

4

v. Hance, 2006 VT 97, ¶ 6, 180 Vt. 357, 910 A.2d 874 ("[W]e review a district court's decision regarding the type and amount of bail for abuse of discretion.").

¶ 10. Here, the record shows that the proceedings below support the court's order setting bail at $25,000 and determining that neither defendant's father nor defendant's girlfriend are responsible adults to whom defendant can be released. In other words, the court did not abuse its discretion in analyzing the evidence before it, in setting bail at $25,000, in imposing the "responsible adult" condition, or in determining that releasing defendant to his father or to his girlfriend would not satisfy that condition. See Hance, 2006 VT 97, ¶ 6.

¶ 11. First, the record does not show that the court set bail at $25,000 with some improper purpose. Indeed, the findings show that the court set the bail amount specifically with the intention of reducing defendant's risk of flight. See Cardinal, 147 Vt. at 464, 520 A.2d at 986; Pray, 133 Vt. at 541-42, 346 A.2d at 229. The court referred to defendant's father's offer to post bail for defendant using a loan taken out against his home, which he valued at about $42,000. It found that the possibility of his father losing his home would encourage defendant to appear at future court proceedings: "the [c]ourt finds it's unlikely that the son would flee the area knowing that his father would risk losing his house." It remains to be seen if father could actually get a loan on his home but the court did consider that as an option.

¶ 12. Second, the record does not show that the court abused its discretion in determining that the combination of bail with a "responsible adult" condition was the "least restrictive" set of conditions to "reasonably ensure the appearance of the defendant as required." See Hance, 2006 VT 97, ¶ 6; see also 13 V.S.A. § 7554(a)(1)(A) (describing that the court may "[p]lace the defendant [who has committed an offense that is not a nonviolent misdemeanor or nonviolent felony as defined in 28 V.S.A. § 301] in the custody of a designated person or organization agreeing to supervise him or her"). To determine which of the conditions to impose under 13 V.S.A. § 7554(a)(1), the court specifically considered each of the factors required by 13 V.S.A.

5

§ 7554(b). It considered the "nature and circumstances" of the manslaughter charge, agreeing with defendant that "there's no evidence that it was the defendant's intent to kill the decedent" but also stating that it was a "depraved act, to put a gun to somebody's head and pull the trigger." It considered the "weight of the evidence," finding that there was "enough for probable cause." It considered defendant's "employment and financial resources," determining that they were "minimal." And it considered defendant's "family ties" and "length of residence in the community," determining that "he doesn't have any real family or community ties to this area" and that releasing him to his home in Granville, New York, would "make it much more difficult to monitor his abiding by conditions of release."[2]

¶ 13. Weighing its assessments of these factors—and pointing to specific factors—the court found that defendant posed a "significant flight risk." The specific factors that it found contributed to that risk were the "nature and circumstances" of the manslaughter charge, which the court noted is a "serious felony," defendant's lack of ties to the area, and his "minimal financial resources," indicating that he does not have "substantial contacts" to the Poultney area— "obviously he could get a minimum wage job anywhere." It was within the court's discretion to weigh these factors in this way. And after determining that defendant posed a "significant risk of flight," it certainly was within the court's discretion as the fact-finder to determine that the combination of bail with the "responsible adult" condition was the "least restrictive" set of conditions to "reasonably ensure the appearance of the defendant as required." 13 V.S.A. § 7554; see also Hance, 2006 VT 97, ¶ 6. Absent an abuse of the court's discretion, it is not our place to

---

[2] The court determined that the remaining three factors did not weigh towards a risk of flight. It noted that defendant had no previous record of convictions or record of nonappearance at court proceedings. And in considering defendant's "character and mental condition," the court acknowledged that his alleged crime "certainly wasn't intended to be an act of violence" and "there's nothing [in defendant's character and mental condition] to indicate bail is warranted with the exception that the allegations are that he had been drinking alcohol and smoking marijuana before his alleged criminal action."

second guess the court's decision, and defendant presents no evidence that the court abused its discretion.

¶ 14. Finally, the record also does not show that the court abused its discretion in determining that neither defendant's father nor defendant's girlfriend satisfied the "responsible adult" condition. As to defendant's father, the court interpreted father's failure to accurately state his history of criminal convictions as evidence that "he was not forthcoming with the [c]ourt in his testimony . . . [s]o the [c]ourt does not trust that he would be forthcoming . . . if his son committed any violations of his conditions of release." And as to defendant's girlfriend, the court pointed to "her young age" and the fact that "there's been some intimidating action by the defendant against her," including when "he smashed her TV and smashed her Xbox" as evidence that "questions whether or not she would turn in [defendant] if he violated his conditions of release." The record therefore shows that the court's conclusions were based on evidence before it, and nothing in the record shows that the court abused its discretion in making those conclusions. 13 V.S.A. § 7554; see also Hance, 2006 VT 97, ¶ 6.

Affirmed.

FOR THE COURT:

_____
Chief Justice

7